**LAND LOCATORS OF TEXAS, INC., Appellant,**

v.

**LA COUR DU ROI, INC., Appellee.**

No. 8360.

Court of Civil Appeals of Texas, Beaumont.

Oct. 25, 1979.

Rehearing Denied Nov. 29, 1979.

Larry R. Jones, Houston, for appellant.

William J. Ehlert, Paul A. Ehlert, Brenham, for appellee.

KEITH, Justice.

The appeal is by the plaintiff in the trial court from a judgment denying the declaratory relief it sought and granting the relief sought on the cross action filed by the original defendant. The dispute centers around the interpretation of a written contract to acquire an option contract to purchase land, and, specifically, whether plaintiff was entitled to reimbursement for twenty-seven tracts of land it was required to convey to defendant.

The trial court, after a lengthy bench trial, filed extensive findings of fact and conclusions of law. We affirm.

The defendant, La Cour Du Roi, Inc., is a Texas corporation whose sole stockholder is Robert V. King; the plaintiff, Land Locators of Texas, Inc., is also a Texas corporation whose sole stockholder is Drago Daic. Both principals were experienced and sophisticated dealers in real estate and were thoroughly familiar with transactions such as those involved in the case at bar. We will speak of the parties simply as "Land Locators" and "La Cour", and will make our statement as brief as possible, considering the length of the record.

There are three written instruments involved in this suit:

(a) An "Earnest Money Contract" dated July 2, 1976, between La Cour as Purchaser and Champion Realty Corporation as Seller, whereby La Cour acquired an option to purchase approximately 2350 acres of land in Montgomery County.

(b) A "Purchase Agreement" dated December 28, 1977, wherein La Cour agreed to sell and assign its remaining rights in the Champion contract to Land Locators; and,

(c) An "Assignment of Contract" dated January 25, 1978, wherein La Cour assigned all of its rights in the Champion agreement to Land Locators. This agreement had attached thereto as exhibits and incorporated therein by reference the two instruments mentioned earlier.

The two instruments between the parties [(b) and (c), supra] each mentioned 27 parcels of land, thereby referring to 27 smaller tracts included within the lands encompassed in the Champion contract which La Cour had theretofore sold to third parties. There is no dispute as to the location, description, or identity of these several parcels of land. The whole dispute arises out of the interpretation of the contract—that is to say, whether Land Locators was required to pay for such 27 tracts of land to Champion and to deliver title thereto to La Cour without a right to reimbursement. None of the other terms of the contract is involved in the appeal.

In their original brief, Land Locators predicated its appeal upon four points of error, each challenging a particular fact finding of the trial court. The first two of these points urge the contention that the trial court erred "as a matter of law" in concluding that Land Locators had obligation to convey the 27 tracts of land to La Cour with no right of reimbursement because of the implied obligation (which the trial court did not find to exist) on the part of La Cour to pay a reasonable price therefor. Point three challenges the trial court's finding that the contract was unambiguous.

Land Locators argues that there is an irreconcilable conflict between Provisions 2.01 of the "Purchase Agreement" and Provisions 3.01 and 3.02 thereof. The first provision stated that "[t]he total sales price is $854,960.00, payable as follows . . ." The latter two provisions required Land Locators to exercise the options in the Champion contract and, when such was done, to convey the 27 tracts to La Cour free and clear of liens. Counsel for Land Locators argue that the trial court erred in failing to find that there was an implied covenant to pay Land Locators a reasonable price for the 27 tracts.

For more than fifty years, the Texas courts have followed the rationale of *Freeport Sulphur Co. v. American Sulphur Royalty Co.*, 117 Tex. 439, 6 S.W.2d 1039, 1041 (1928), in dealing with implied covenants in written contracts. In the recent case of *Emmord's, Inc. v. Obermiller*, 526 S.W.2d 562, 565 (Tex.Civ.App.—Corpus Christi 1975, writ ref'd n. r. e.), the court summarized the holding in *Freeport Sulphur*, supra:

"Before a covenant will be implied, it must appear from the express terms of the contract that it was so clearly in the contemplation of the parties that they deemed it unnecessary to express it or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole."

Land Locators cites and quotes from *Danciger Oil & Refining Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635; 137 A.L.R. 408 (1941), but it quotes the exception stated by Chief Justice Alexander,[1] and not the general rule stated in *Danciger* which now apply to this case:

"An implied covenant must rest entirely on the presumed intention of the parties as gathered from the terms as actually expressed in the written instrument itself . . . . It is not enough to say that an implied covenant is necessary in order to make the contract fair, or that without such a covenant it would be improvident or unwise, or that the contract would operate unjustly." *Id.*

■ We find no basis for the application of the implied covenant rule to the case at bar. Land Locators' president and sole stockholder testified that he read and understood the final documents, the Assignment of Contract and the Purchase Agreement, which were incorporated therein. He admitted that he understood that his company was obligated by such contract to pay Champion the money due it under the Earnest Money Contract *and* that Land Locators was bound to pay Champion for the 27 tracts and to convey such tracts to La Cour free and clear of liens. He admitted, as indeed he was required to admit, that none of the instruments required La Cour to reimburse his company for the cost of the 27 tracts.

King, president of La Cour, testified unequivocally that there was never any agreement to reimburse Land Locators for its purchase of the 27 tracts; and, the trial court made a finding that there was no oral agreement requiring La Cour to reimburse Land Locators for the cost thereof. We find no merit in the first three points of error and each is overruled.

■ In a supplemental reply brief, Land Locators contends that its pleadings of ambiguity and mutual mistake, although

general in nature, were sufficient to permit it to urge the defenses tendered. We agree. However, its contention that there was mutual mistake as to the reimbursement for the 27 tracts is not well taken. The record shows very clearly that La Cour had no intention of making any payment to Land Locators for its costs in securing title to the 27 tracts. In essence, Land Locators argues that its unilateral mistake, if any mistake was made, entitled it to reimbursement.

In *Newsom v. Starkey*, 541 S.W.2d 468, 472 (Tex.Civ.App.—Dallas 1976, writ ref'd n. r. e.), this language was used:

"By definition a mutual mistake of fact occurs where the parties to an agreement have a common intention, but the written contract erroneously reflects that intention due to a mistake on the part of *both parties* in writing the agreement." (emphasis in original)

R. V. King testified that he made no mistake and the trial court agreed.

Land Locators' present contention is answered by language found in *Champlin Petroleum Co. v. Pruitt*, 539 S.W.2d 356, 362 (Tex.Civ.App.—Fort Worth 1976, writ ref'd n. r. e.):

"A mistake by only one party to an agreement, where the mistake is not induced by the acts of the other party, is not grounds for setting the agreement aside."

■ The trial court's findings of fact and conclusions of law, being based upon probative evidence found in our record, are entitled to the same dignity as jury findings. *Gandy v. Culpepper*, 528 S.W.2d 333, 335 (Tex.Civ.App.—Beaumont 1975, no writ), and authorities therein cited.

Having reviewed the extensive record under the applicable standards, we find no error and the judgment is affirmed.

---

1. Omitting the first word, this is the quotation relied upon by Land Locators: "However, covenants will be implied in fact when necessary to give effect to the actual intention of the parties as reflected by the contract or conveyance as construed in its entirety in the light of the circumstances under which it was made and the purposes sought to be accomplished."