**B. V. LONG, Trustee, et al., Appellants,**

v.

**Robert L. HITZELBERGER, Appellee.**

**No. 5440.**

Court of Civil Appeals of Texas, Eastland.

June 5, 1980.

Rehearing Denied Aug. 7, 1980.

R. M. Rutledge, Rutledge, Rutledge & Connally, Abilene, for appellants.

Royce Adkins, Adkins, Chapman & Fouts, Haskell, for appellee.

BROWN, Justice.

The issue is whether co-owners of certain oil and gas leases are entitled as a matter of right to a partition of such leases. B. V. Long, Trustee and Tony Rothrock sued Robert L. Hitzelberger for partition alleging that the leases could not be equitably partitioned in kind and should, therefore, be sold and the proceeds divided between the parties in the proportions of their interests. Hitzelberger answered that a partition would destroy certain contractual obligations Long and Rothrock owed to him under their Operating Agreement and filed a counterclaim alleging that Long and Rothrock had not fulfilled their obligations under that agreement. After a nonjury trial, judgment was entered denying the partition and decreeing that Hitzelberger take nothing on his counterclaim. Long and Rothrock appeal. We affirm.

In May of 1977, Hitzelberger began acquiring oil and gas leases covering certain lands situated in Haskell County, Texas. He and the Appellants later entered into a letter agreement concerning the assignment of such leases. The relevant portions of that agreement are:

The following is an understanding of the agreement made with you (Hitzelberger) on your "North Haskell Prospect" located approximately 4½ miles north of the town of Haskell in the A. Hamil and surrounding surveys, Haskell County, Texas:

1. You are owner of certain oil and gas leases totaling approximately 986 acres which you will assign to us in such a manner that we will own a net 81.25% interest in said leases.

2. We will pay you $25.00 per acre for all leases assigned to us.

3. We will drill an exploratory well somewhere on the acreage to approximately 5300 feet.

4. When total depth of the exploratory well has been reached and before an attempt to complete the well has been made, you will then participate in the well and future wells to the extent of ³⁄₃₂nds of the working interest.

5. If after 4 years from this date we have not drilled, and plugged or completed a minimum of 2 wells, we will reassign all leases not then held by production. (parenthesis ours)

Hitzelberger then assigned the leases to B. V. Long, Trustee, reserving a ¹⁄₁₆ overriding royalty interest in each of the leases.

In November of 1977, Appellants began drilling a well on the property covered by the leases. The well was drilled to a depth of 5300 feet but was never completed because the parties disagreed about the terms of an Operating Agreement covering these leases and certain surrounding ones.

In April of 1978, Hitzelberger assigned three additional oil and gas leases to Appellants again reserving a ¹⁄₁₆ overriding royalty interest. Then in May of 1978, Appellants conveyed an undivided ³⁄₃₂ working interest in all seven of the aforementioned leases back to Appellee. The parties finally settled their differences and entered into the Operating Agreement dated June 15, 1978, covering the seven above-mentioned leases and one other jointly owned lease.[1] This Operating Agreement expressly incorporated by reference the previous Letter Agreement and provided that the terms of the Letter Agreement would prevail in case of a conflict between the two instruments. Subsequently, Long and Rothrock filed this suit to partition. The court denied the partition and concluded:

That a contract existed between the Plaintiff, B. V. Long, Trustee, and Defendant, Robert Hitzelberger, whereby Plaintiff, B. V. Long, Trustee, was obligated to *drill and complete* an exploratory well to a depth of approximately 5300 feet on the McKinney, Calloway, Simmons and Brock leases and was obligated to drill one additional well on the acreage within four years from August 12, 1977, or else to reassign all leases not held by production to Defendant, Robert Hitzelberger.

That to allow Plaintiff, B. V. Long, Trustee to partition the mineral leases either in kind or by sale would defeat the contractual rights of Defendant, Robert Hitzelberger.

That Plaintiff, B. V. Long, Trustee, cannot by partition of oil and gas leases escape her contractual obligations to Defendant, Robert Hitzelberger. (emphasis ours)

The thrust of Appellants' appeal is that compliance with all contractual obligations has been met; therefore, there exists an absolute right to partition under Tex.Rev. Civ.Stat.Ann. art. 6082 (Vernon 1970). See *Moseley v. Hearrell*, 171 S.W.2d 337 (Tex. 1943). Appellants argue that they were only required to drill a well on the acreage and not to drill and complete a well; there-

1. This "eighth" lease was originally acquired by the Appellants and ³⁄₃₂ of the working interest has been assigned to Appellee.

fore, they have fulfilled their contractual obligations and no contract rights of Appellee will be destroyed.

Even assuming that under the terms of the drilling contract appellants were only required to drill and not complete the first well, the contract requires by its other provisions the drilling of two wells within four years. We conclude that it must be inferred by such clear language that the parties did not intend for their estate to be partitioned.

██ Article 6082 confers upon any joint owner of any oil and gas lands, "whether held in fee or by lease or otherwise," the right to demand segregation of his interest from that of his co-owner. *Moseley v. Hearrell,* supra at 338; *Adams v. Simmons,* 376 S.W.2d 584 (Tex.Civ.App.—Eastland 1964, writ ref'd n. r. e.). Nevertheless, co-owners may expressly or impliedly agree not to assert this right. *Moseley v. Hearrell,* supra; *Lichtenstein v. Lichtenstein Building Corporation,* 442 S.W.2d 765, 769 (Tex.Civ.App.—Corpus Christi 1969, no writ); *Warner v. Winn,* 191 S.W.2d 747, 751 (Tex.Civ.App.—San Antonio 1945, writ ref'd n. r. e.). The agreement in this case does not expressly provide against partition, and an agreement preventing partition, if there be any, must be implied.

The court in *Warner v. Winn,* supra at 751 stated:

It seems reasonably clear that when parties contract for the drilling of wells, and such drilling is either made the consideration for the transfer of a mineral estate or is necessary to extend or perpetuate a lease, it must be inferred that the parties to the drilling agreement did not intend for the estate to be partitioned.

Also, Professor Hemingway, after analyzing the cases which have denied a partition of mineral interests, states:

Therefore, in Texas, where drilling is being performed for an interest, an agreement against partition will be implied for as long as development is to continue. However, following the completion of the drilling program an agreement to operate and manage the properties, without more,

will not be sufficient to raise the implication.

R. Hemingway, The Law of Oil and Gas § 3.3 at 104 (1971). See also: *Sibley v. Hill,* 331 S.W.2d 227 (Tex.Civ.App.—El Paso 1960, no writ); *Odstrcil v. McGlaun,* 230 S.W.2d 353 (Tex.Civ.App.—Eastland 1950, no writ); *Moss & Urschel v. Clark,* 82 S.W.2d 1090 (Tex.Civ.App.—Texarkana 1935, writ ref'd); *Elrod v. Foster,* 37 S.W.2d 339 (Tex.Civ.App.—Austin 1931, writ ref'd).

██ We hold that since the drilling of the second well is to be performed for the retention of Appellants' interest in the leases, an agreement against partition must be implied and the trial court was correct in denying partition.

We have considered and overrule all points of error presented by Appellants.

The judgment is affirmed.

DICKENSON, Justice, dissenting.

I respectfully dissent. Tex.Rev.Civ.Stat. Ann. art. 6082 (Vernon 1970) expressly provides that any joint owner of an interest in oil and gas leases may compel a partition thereof. As pointed out by *Moseley v. Hearrell,* 141 Tex. 280, 283, 171 S.W.2d 337, at 339 (1943):

It may sometimes be inequitable to one or more of the joint owners if another co-owner is permitted to enforce partition of the jointly owned property; but this is one of the consequences which one assumes when he becomes a co-tenant in land. If he does not provide against it by contract, he may expect his co-tenant to exercise his statutory right of partition at will.

The majority has implied an agreement against partition. I am unable to agree to this holding in view of the fact that the parties deleted the paragraph which would have specifically waived the rights to partition when they executed the Operating Agreement which is dated June 15, 1978.

Our Supreme Court stated the rule in *Freeport Sulphur Co. v. American Sulphur Royalty Co.,* 117 Tex. 439, 450, 6 S.W.2d 1039, at 1041 (1928), as follows:

The court cannot make contracts for parties, and can declare implied covenants to exist only when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made. Before a covenant will be implied in the express terms of a contract, and in some cases in view of the customs and practices of the business to which the contract relates, it must appear therefrom that it was so clearly in the contemplation of the parties as that they deemed it unnecessary to express it, and therefore omitted to do so, or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole.

See also *Land Locators of Texas, Inc. v. La Cour Du Roi, Inc.*, 592 S.W.2d 7 (Tex.Civ. App.—Beaumont 1979, writ ref'd n. r. e.).

In this case the parties deleted an express contractual provision which the majority opinion now states "must be implied" because of the contract provision which requires the completion or plugging of two wells. I would hold that Tex.R.Civ.P. 770 authorizes a sale of these jointly owned working interests in the oil and gas leases, with the proceeds to be partitioned among the persons entitled thereto. Such a sale would, of course, be subject to the outstanding overriding royalty interests and to the provisions of the Operating Agreement, including the contractual right of reassignment to Hitzelberger if two wells are not drilled and completed or plugged by August 12, 1981.